

ENTERED
01/20/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| ATP OIL & GAS CORPORATION § | CASE NO: 12-36187 |
|     Debtor(s) § | |
| § | CHAPTER 7 |
| § | |
| RODNEY TOW § | |
|     Plaintiff(s) § | |
| § | |
| VS. § | ADVERSARY NO. 14-3316 |
| § | |
| GEMINI INSURANCE COMPANY, *et al* § | |
|     Defendant(s) § | |

**MEMORANDUM OPINION**
**(INCLUDING RECONSIDERATION OF**
**OCTOBER 9, 2015 MEMORANDUM OPINION)**

    Underwriters at Lloyd's, London Syndicate #4711 ("Underwriters") and Gemini Insurance Company have filed motions for summary judgment seeking a determination that no duty exists to defend or indemnify ATP in the underlying lawsuit. Underwriters' motion for summary judgment is granted. Gemini's motion is granted in part and denied in part.

## Background

    These motions follow a Memorandum Opinion issued on October 9, 2015 in which the Court denied Tow's motions for partial summary judgment seeking a declaratory judgment that Underwriters and Gemini owed a duty to defend ATP in the underlying lawsuit. (ECF No. 46). The Court also granted Underwriters' cross motion for partial summary judgment finding that it does not owe a duty to defend ATP in the underlying suit. (*Id.*). The facts giving rise to the dispute are detailed in the October 9 Opinion, but are briefly summarized here.

ATP had a Master Service Agreement ("MSA") with Greystar Corporation under which Greystar would supply ATP with personnel and equipment related to hydrocarbon development. (ECF No. 33-2). The MSA required Greystar to defend and indemnify ATP for claims involving bodily injury to Greystar employees sustained while working for ATP. Gemini issued a general liability policy to Greystar, effective during the relevant time period under which ATP was added as an additional insured. ATP also held a general liability policy issued by Underwriters during the relevant time period. (ECF No 25-3).

In December 2012, Randy Comeaux, an employee of Greystar, was injured while working on a platform owned and operated by ATP. Comeaux filed a personal injury suit against ATP in federal district court in Louisiana. (ECF No. 25-1). Tow filed this adversary proceeding against Gemini and Underwriters after they refused to defend Comeaux's lawsuit. (ECF No. 1).

As mentioned previously, the Court denied Tow's motion seeking a declaratory judgment regarding Gemini and Underwriters' duty to defend the suit. (ECF No. 46 and 47). Gemini now seeks summary judgment in its favor on its duty to defend and indemnify. Having already determined that Underwriters owes no duty to defend ATP in Comeaux's suit, Underwriters only seeks judgment on its duty to indemnify. Gemini and Underwriters also seek summary judgment on the extra-contractual claims alleged in the complaint based on violations of the Texas Insurance Code.

### Jurisdiction and Authority

At a minimum, this Court possesses "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b). The Fifth Circuit has held that "it is not necessary to distinguish between proceedings 'arising under,' 'arising in a case under,' or 'related to a case under' title 11." *Wood v. Wood (In*

*re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).  The Fifth Circuit noted that § 1334(b)'s language operates "conjunctively to define the scope of jurisdiction." *Id.*  Consequently, bankruptcy courts need only "determine whether a matter is at least 'related to' the bankruptcy." *Bass v. Denney (in re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (citing *Walker v. Candle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995)); *In re wood,* 825 F.2d at 93.

Although subject matter jurisdiction is proper in this Court, questions regarding the constitutional authority of an Article I bankruptcy judge must also be addressed.  Under *Stern v. Marshall*, the question of whether a bankruptcy court may enter final judgment in a case depends on whether the cause of action stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.  131 S. Ct. 2594, 2618 (2011).  This adversary proceeding contains state law claims and non-bankruptcy federal claims which would not necessarily be resolved in the claims allowance process.  However, the Supreme Court recently held that parties may consent to the bankruptcy court's adjudication of a so-called *Stern* claim without implicating Article III issues "when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge." *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1939 (2015).

Tow has consented to adjudication by this Court.  (ECF No. 1 at 2).  Neither Gemini nor Underwriters have affirmatively consented to adjudication.  Nevertheless, this Memorandum Opinion, and its accompanying order, provide interlocutory relief.  *In re Shelton*, 2014 WL 1576864 (Bankr. S.D. Tex. Apr. 18, 2014) (a Court may issue interlocutory orders in proceedings in which the Court does not have authority to issue a final judgment).  Accordingly, the Court has the Constitutional authority to issue this opinion and its accompanying order.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings. A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *City & Cnty. of S. F., Cal. v. Sheehan*, 135 S. Ct, 1765, 1769 (2015). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis.

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact. If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the nonmovant cannot produce evidence to support

an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

**Gemini's Duty to Defend**

As a preliminary matter, in the October 9 Opinion, the Court determined that a fact issue existed as to whether ATP's payment of $2,000 toward insurance premiums left Greystar bearing any material part of the cost. (ECF No. 46 at 14). This issue is significant because if Greystar paid any material part of the cost of coverage, the indemnification clause in the MSA would be rendered invalid pursuant to Louisiana state law. If the indemnification clause is ineffective, Gemini would owe no duty to defend ATP in the underlying suit. In the present motion, Gemini does not present any evidence in favor of invalidating the indemnification clause. Consequently, Gemini is relying solely on the pollution exclusion provision in the policy to deny coverage.

This Memorandum Opinion does not further address whether ATP or Greystar paid for all or a portion of the policy premiums. As set forth in the October 9 Opinion, that question remains pending.[2]

---

[2] The issue of who paid ATP's premium does not implicate the eight-corners rule because it goes solely to the fundamental issue of coverage. *ACE Am. Ins. Co. v. Freeport Welding & Fab., Inc.*, 669 F.3d 832, 840-41 (5th Cir. 2012) ("If we determine that Freeport qualifies as an additional insured during the relevant time period, our analysis will then proceed to the eight-corners rule . . . .").

*Construction of subsection a(4)*

In the October 9 Opinion, the Court found that a fact question remained as to whether the pollutants that caused Comeaux's alleged injury were brought onto the platform in connection with any insured's operations. (ECF No. 46 at 19). In so doing, the Court dismissed Tow's contention that it was the question of *who* brought the pollutants on the platform that was critical. (ECF No. 46 at 18). The Court instead concluded that it was whether the pollutants were brought onto the platform *in connection with* any insured's operations that controlled. (*Id.*). Tow disagrees with the Court's conclusion and now offers an opinion from the Texas Supreme Court in support of his position. (ECF No. 56 at 7). The Court will begin by evaluating whether it correctly framed the issue in its October 9 Opinion. For reference, the pertinent parts of the Gemini policy's pollution exclusion clause are reproduced below:

13. Pollution:

> a. Bodily Injury or Property Damage arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants:
>
>> (1) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured. However, this Subparagraph (1) does not apply to:
>>
>>> (i) . . .
>>>
>>> (ii) Bodily Injury or Property Damages for which You may be held liable, if You are a contractor and the owner or lessee of such premises, site, or location has been added to Your policy as an Additional Insured with respect to Your ongoing operations performed for that Additional Insured at that premises, site, or location; and such premises, site, or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than that Additional Insured.
>>
>> (4) At or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the Pollutants **are brought on** or to the

premises, site, or location **in connection with such operations by such Insured**, contractor, or subcontractor . . . .

(ECF No. 33-3 at 24) (emphasis added).

In *Kelly-Coppedge, Inc. v. Highlands Ins. Co.*, the Texas Supreme Court was called on to determine whether a pollution exclusion clause in an insurance policy excluded coverage for the plaintiff's cleanup costs after a contractor inadvertently struck an oil pipeline while on an easement, resulting in the release of 1600 barrels of crude oil and damaging surrounding property. 980 S.W.2d 462, 463 (Tex. 1998). The dispute turned on whether the term "occupied by" in subsection (1) of the policy encompassed the plaintiff's activities on the easement. *Id.* at 464. The plaintiff argued that "occupy" meant simple presence. The defendant insurance company argued that it must mean something more than mere presence, or else subsection (1) would render subsection (4) meaningless.[3] *Id.*

The court analyzed other courts' treatment of the term "occupy" in similar contexts and found that "occupy" as used in the policy meant that the premises must be *controlled* by the contractor, and that a mere transitory presence did not constitute occupancy. *Id.* at 466-67. The court further concluded that if mere presence was sufficient to establish occupancy, then subsection (4) would be rendered meaningless, because subsection (1) would exclude coverage for all operations of the insured, regardless of whether the insured owned or controlled the property. *Id.* at 467. The court then clarified the pollution exclusion provision by drawing a meaningful distinction between subsections (1) and (4):

---

[3] The policy provisions at issue in *Highlands*, though substantively identical, were numbered differently. The Court uses the Gemini policy section numbers for the sake of clarity.

> Subparagraph [(1)] applies to releases at or from premises owned or controlled by the contractor. Subparagraph [(4)] broadens the scope of the exclusion to include releases at or from premises owned by a third party at which the contractor is performing operations, ***but only if*** the contractor brings the pollutants onto the site.

*Id.* (emphasis in original).

Though the *Highlands* court was primarily concerned with interpreting subsection (1), its reference to the subsection (4) is instructive. In the October 9 Opinion, this Court focused its attention on the requirement that the pollutants be on the premises *in connection with* the insured's operations. However, as the court in *Highlands* pointed out, the *in connection with* requirement is only one-half of the inquiry. It is also critical that the pollutants be brought on or to the premises by the party performing the operations. *Id.* In *Highlands*, the court contemplated a circumstance in which a contractor is performing operations on a third party's premises, but subsection (4) applies equally to premises owned or controlled by insured parties.[4]

The Court's previous interpretation of the policy language did not give adequate effect to the term "such" as used in subsection (4). In subsection (4), the word such is used on two occasions. The first use is in reference to the operations (". . . in connection with such operations . . ."), and the second is in reference to the party (". . . by such Insured, contractor, or subcontractor . . ."). On both occasions, the term "such" instructs the reader to refer to the previous use of the term "operations" and "insured, contractor, or subcontractor" to determine its proper meaning. The policy contemplates excluding coverage if the party performing operations,

---

[4] Tow argues that the subsections are mutually exclusive, and that *Highlands* directs the Court to only apply subsection (1) in cases when the premises is owned or controlled by an insured, as it is in the present case, and to only apply subsection (4) in cases when an insured is working on a third party's premises. (ECF No. 56 at 6). *Highlands* does not make this conclusion. The court in *Highlands* stated that subsection (4) "broadens the scope of the exclusion to include releases at or from premises owned by a third party . . . ." The language of both the court in *Highlands* and the policy itself is clear that subsection (4) encompasses third party premises, but is not limited to them. Indeed, the policy states that subsection (4) applies to "*any* premises." (ECF No. 33-3 at 24) (emphasis added).

whether it is an insured, or someone working on an insured's behalf, brings onto the premises pollutants used in connection with the operations that party is performing.

Giving proper effect to subsection (4), coverage is only excluded if Greystar brought pollutants on to the platform, and those pollutants were present in connection with Greystar's operations. Alternatively, if ATP brought pollutants on the platform, and those pollutants were present in connection with the operations ATP was performing, coverage would also be excluded. However, if ATP brought the pollutants on the platform, and Greystar used them in connection with Greystar's operations, coverage would not be excluded. It is not difficult to imagine a circumstance in which ATP, the owner of the platform, provided all of the materials necessary for hydrocarbon development and employed Greystar to perform the labor.

Accordingly, the issue as framed in the October 9 Opinion must be reconsidered and amended.[5] The issue of fact is whether the pollutants that caused Comeaux's alleged injury were brought onto the platform by an insured, or a party working on an insured's behalf, and that party used them in connection with the operations they were performing on the platform.

*Application of subsection a(4).*

Tow correctly states that the complaint does not specify who brought the pollutants onto the platform. Texas courts follow the eight-corners rule to determine whether an insurer owes a duty to defend. Under this rule, courts look to the facts alleged within the four corners of the pleadings, and measure them against the language contained within the four corners of the insurance policy. *Evanston Ins. Co. v. Legacy Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012). If a complaint potentially includes a claim covered by the policy, the insurer must defend the entire suit. *Zurich Am. Ins. Co v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). Based on the Court's

---

[5] A court has the inherent power to reconsider its interlocutory orders sua sponte. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2005 WL 1798423, at *2 (S.D. Tex. July 26, 2005).

amended construction of subsection (4), the complaint potentially states a claim covered by the policy. Accordingly, if Greystar paid no material part of the cost of ATP's coverage, Gemini would owe a duty to defend ATP in the underlying litigation.

**Extra-Contractual Claims against Gemini and Underwriters**

Underwriters and Gemini request the Court grant summary judgment in their favor on Tow's extra-contractual claims. Extra-contractual claims under the Texas Insurance Code require the same predicate for recovery as bad faith causes of action in Texas. *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 870 (5th Cir. 2014). Therefore, an insurer cannot be the subject of a tort suit for challenging a claim of coverage if it has a reasonable basis for denial of that coverage. *Id.* As this Court has concluded that Underwriters' does not owe a duty to defend ATP in the underlying lawsuit, it is apparent they have a reasonable basis for denying coverage. Even if Gemini has a duty to defend in this case, it also had a reasonable basis for denying coverage. In its previous Memorandum Opinion the Court addressed several non-frivolous arguments independent of the pollution exclusion clause that formed the basis of Gemini's denial of coverage. (ECF No. 46 at 8-14). Accordingly, Tow's extra-contractual claims against Gemini and Underwriters fail as a matter of law.

**Underwriters' Duty to Indemnify**

Underwriters requests this Court grant summary judgment in their favor on their duty to indemnify ATP for any liability resulting from the Comeaux lawsuit. Typically, the duty to indemnify is not justiciable until the underlying lawsuit is concluded. However, if the same reasons that negate the duty to defend also negate any possibility that the insurer will ever have a duty to indemnify, then the duty to indemnify may be determined before the conclusion of the underlying lawsuit. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex.

1997).  Tow cites Comeaux's deposition testimony wherein he states he suffered other injuries on the platform that he did not include in the complaint but for which he may be compensated. (ECF No. 58 at 3-4).  Underwriters argues that any such injury was not included in the complaint, and as the Louisiana court has barred any further amendments to the complaint, Comeaux's recovery is limited to the injuries he has alleged.  (ECF No 59 at 2).  The Court agrees with Underwriters' assessment of the alleged injuries for which Comeaux may seek compensation and ATP may seek indemnity.  When it is clear that a court's ruling on the duty to defend must also control the duty to indemnify, a court may decide the issue before litigation concludes.  *LCS Corrections Srvcs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 672 (5th Cir. 2015) (citing *Griffin*, 855 S.W.2d at 84).  The *Griffin* exception is applicable in this case.  Underwriters owes no duty to indemnify for the same reasons that this Court concluded it owed no duty to defend—the chemical fumes that caused Comeaux's alleged injuries qualify as pollution for the purposes of the policy exclusion.  Accordingly, Underwriters does not owe a duty to indemnify ATP for any liability resulting from the Comeaux lawsuit[6] and Underwriters' Motion for Summary Judgment is granted.

### Conclusion

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **January 20, 2016.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[6] This determination is based on the eight-corners of the presently filed suit.  This opinion does not extend to potential coverage if Comeaux seeks relief by amendment or otherwise such that the four-corners of any proposed or actual amended complaint, or any new claim, would be covered.